# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

**VALENTINO SANGSTER,**                :
                                       :
   Movant,                        :
                                       :
   v.                             :   Civil No. 5:05-cv-76 (HL)
                                       :   Criminal No. 5:02-cr-57 (HL)
**UNITED STATES OF AMERICA,**          :
                                       :
   Respondent.                    :
_____

# ORDER

    This matter is before the Court on the Report and Recommendation of United States Magistrate Judge G. Mallon Faircloth, entered on March 29, 2005.  After consideration of the objections filed by Movant, Valentino Sangster, the Court hereby finds as follows.

    Valentino Sangster was indicted in a superseding indictment returned on February 28, 2003, and charged with twelve counts of interstate stalking in violation of 18 U.S.C. § 2261A and 18 U.S.C. § 2.  On September 3, 2003, Sangster entered a plea of guilty to Count 1 of the indictment.  As part of the written plea agreement, Sangster agreed to "accept responsibility for the conduct that is alleged in the Superseding Indictment as a whole."  As a result of the plea agreement, therefore, Sangster admitted to having used the telephone or the mail on twelve occasions to "engage in a course of conduct that placed Lessie Solomon and members of her immediate family in reasonable fear of death and serious bodily injury."  In exchange for the plea agreement, the Government arranged for the United States Attorney in each of

three districts to agree to refrain from prosecuting Sangster for similar wrongful acts committed in those districts.

On November 25, 2003, Sangster was sentenced in this Court. The Court determined that the appropriate initial guideline sentencing range was 37 to 46 months, based on a total offense level of 17 and a criminal history category of 4. Sangster objected to the determination of the initial guideline sentencing range, arguing that the Court improperly added a point to the calculation based upon a vulnerable victim issue. The Court included in its calculations a telephone conversation that Sangster allegedly had with Lessie Solomon's nine-year-old daughter in which Sangster allegedly made threats to Lessie Solomon. Sangster argued that he never spoke with Lessie Solomon's daughter and further argued that without the additional point for a vulnerable victim, the proper guideline sentencing range should have been 30 to 37 months.

Before making findings on the question of whether Sangster spoke with Lessie Solomon's daughter, the Court heard testimony from Jalaine Ward, an agent with the Federal Bureau of Investigation. Ward testified that Lessie Solomon's daughter told her that on June 8, 2002, she answered the phone, heard Sangster's voice on the other end, and heard Sangster make threatening remarks about her mother. The superseding indictment lists June 8, 2002, as one of the dates on which Sangster's wrongful conduct occurred, and identifies the wrongful act as being based on a telephone call. However, the superseding indictment does not specifically state that the wrongful conduct included the act of speaking to the daughter.

After hearing from the FBI agent and reviewing the contents of the superseding indictment, the Court found that Sangster spoke with the daughter on June 8, 2002, and made threatening remarks.

After determining that the initial guideline sentencing range was 37 to 46 months based on a total offense level of 17 and a criminal history category of 4, the Court then departed upward. The Court found that Sangster continually harassed and stalked the victim over a prolonged period of time. The Court also considered Sangster's conduct with regard to the offenses in the three other districts for which he was not going to be charged. The Court then determined that the proper offense level was 21 and the proper criminal history category was 4, thus yielding a sentencing guideline range of 57 to 71 months. The offense to which Sangster entered his plea of guilty prescribed a maximum term of imprisonment of 60 months; the Court sentenced Sangster to 60 months imprisonment. Sangster made no objection to the upward departure at the time of sentencing.

Sangster appealed from the sentence imposed. In an opinion filed on July 20, 2004, and made the mandate of this Court on August 23, 2004, the United States Court of Appeals for the Eleventh Circuit affirmed the sentence imposed. The court held that the number of harassing calls and the uncharged conduct each provided a proper basis for an upward departure. The court determined, therefore, that there was no plain error in the sentence imposed.

After Sangster's sentence became final, the Supreme Court of the United States issued

its decision in United States v. Booker, ____ U.S. ____, 125 S. Ct. 738 (2005). In Booker, the Court reaffirmed its holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), stating:

> Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Booker, 125 S. Ct. at 756. The Court went even further in Booker, however, and held that the Sixth amendment is violated by the imposition of an enhanced sentence under the sentencing guidelines when the sentencing judge bases his determination on a fact not found by a jury or admitted by the defendant, even though the sentence is within the statutory maximum set by Congress. Id. The Court reasoned that in a mandatory guideline sentencing scheme the relevant "statutory maximum" for Apprendi purposes is the maximum prescribed by the sentencing guidelines, not the maximum prescribed by Congress.

In Booker, therefore, the Court remanded the case to the district court for resentencing because the judge sentenced Booker in excess of the guideline maximum based on his finding as to the quantity of cocaine involved–a fact not found by the jury. In Booker, the district court did not exceed the statutory maximum set by Congress for the offense at issue; nevertheless, because the sentencing guidelines required the district court to depart upward from the original sentencing guideline maximum based on facts not found by the jury, the Court found that the sentence violated the Sixth Amendment.

Here, believing that the result in Booker was applicable to his case, Sangster filed a

timely Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. In the § 2255 Motion, Sangster argues that the Court made factual findings that improperly raised his sentence beyond the guidelines range. He contends that the Court's conduct violated his right to have a jury determine the facts essential to his punishment. In his Motion, Sangster seeks to have his sentence reduced from 60 months to 46 months.

Sangster's § 2255 Motion was referred to a United States Magistrate Judge. In a Report and Recommendation entered March 29, 2005, the Magistrate Judge found that Sangster's Motion was without merit and recommended that it be denied. Sangster submitted written objections to the Recommendation in the form of a document styled "Request for Summary Judgment in Opposition of the Magistrate's Response Pursuant to U.S.C. § 636(b)(1) and 28 U.S.C. § 2255." In his objections, Sangster renews his argument that the imposition of the higher sentence resulted from impermissible factfinding in violation of the decision in <u>Booker</u> and again asks that his sentence be reduced in such a way as to eliminate the improper factfinding.

Sangster is correct that pursuant to the decision in <u>Booker</u>, an enhanced sentence, such as the one he received, violates the Sixth Amendment when based on facts not admitted by him in a plea agreement. However, contrary to Sangster's understanding of <u>Booker</u>, the violation does not stem from judicial factfinding–judges have historically engaged in judicial factfinding when imposing sentences and will continue to do so after <u>Booker</u>. The Sixth Amendment violation occurs, according to the Supreme Court, because of the mandatory nature of the

sentencing guidelines. As the Court explained, the mandatory nature of the sentencing guidelines, in effect, changed the "statutory maximum" by *requiring* judges to impose greater sentences based on facts found by using a preponderance of the evidence standard. Booker, 125 S. Ct. at 749. Rather than limit the factfinding ability of judges, the Supreme Court struck down those sections of the sentencing guidelines that made them mandatory and made them advisory only. In light of the Court's decision in Booker to render the sentencing guidelines nonbinding, the relevant "statutory maximum" for Apprendi purposes is now the maximum penalty prescribed by Congress and set forth in the United States Code. The maximum punishment recommended by the sentencing guidelines no longer has the constitutional significance it had before Booker was decided.

In Booker, therefore, the Court did not strike the enhanced portions of the invalidated sentences but, instead, directed that new sentencing hearings be held in order for the sentencing courts to impose sentences under a nonmandatory system. Booker, 125 S. Ct. at 769. On remand, the sentencing court in Booker was free to consider the same facts it had considered in imposing the initial sentence, but was not *required* to enhance the sentence as a result of those findings. Thus, in this case, even if Sangster could establish a Booker error, at best, he would be entitled to a resentencing hearing, in which the Court could engage in the same judicial factfinding and could impose the same sentence, but such sentence would not be mandatory.

Sangster will not get the opportunity, however, to establish a Booker error. As the

Magistrate Judge noted, the Supreme Court directed that its holding in Booker would apply to all cases on direct review. Booker, 125 S. Ct. at 769. The United States Court of Appeals for the Eleventh Circuit recently concluded that the constitutional rule announced in Booker does not apply retroactively to § 2255 cases on collateral review. Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005). In Varela, the Eleventh Circuit affirmed the denial of Varela's § 2255 motion because the court concluded that Varela was not entitled to the benefit of the decision in Booker on collateral review.

Sangster's challenge pursuant to the recent decision in Booker is likewise brought on collateral review. Like the defendant in Varela, Sangster is not entitled to the benefit of the decision in Booker in a § 2255 Motion. Accordingly, Sangster's § 2255 Motion must be denied. Therefore, to the extent that the Magistrate Judge's Recommendation to deny the § 2255 Motion is based on the fact that Sangster's Booker challenge is raised in a § 2255 Motion, and is thus barred, the Recommendation is hereby adopted by the Court.

**SO ORDERED**, this the 5th day of May, 2005.

                                                                          s/ Hugh Lawson
                                                                          **HUGH LAWSON, JUDGE**

mls